The first case for oral argument, or the second case, is 13-6054WA and the Matter of Kathy A. Cruz. Mr. Rosenzweig, good morning. Good morning, Your Honor. I'm Jeff Rosenzweig from Little Rock, Arkansas, and I represent Kathy Cruz, who is actually in the audience. Thank you for coming up to Omaha. She practices in Hot Springs, Arkansas. And, of course, as you know, we're here on appeal of sanctions issued by Judge Taylor. And we respectfully submit that he made several significant mistakes that require this panel to reverse him. One is on the application of the Rule 11 sanctions, Rule 9011 sanctions themselves. Second is the application of separate sanctions for the alleged false testimony at the trial. And third, the question as to whether he could suspend at all, considering what the district court rules for the eastern and western districts of Arkansas were. First, on the Rule 9011 sanctions, in the hearing, a large part of the time, I think, and this is probably fairly clear from the record, Judge Taylor and Ms. Cruz and I, to some extent, were all talking past each other. Judge Taylor, what we were trying to convey to Judge Taylor, is that Ms. Cruz had a good faith basis for what she did. She would, I'm sorry, I thought someone asked a question. I was just clearing my throat, sorry. Okay. She had a good faith basis for what she did. And we tried to make clear that in these numbers, which Judge Taylor was somewhat fixated on, she was dealing with a situation where the parties had had these sort of off-books transactions, there wasn't any central registry where things were being paid, plus the fact that the parties, that the father had paid a significant amount of money, and the creditor, Ms. Crystal and Young, Stevens, had sort of arbitrarily assigned numbers to certain categories, and eventually the parties, all the parties, were able to agree that there was a certain amount of money. All the parties appeared to agree. But don't we start with the proposition that the categories, as you call them, which I'll call pre- and post-petition DSO obligations, aren't those categories significant and important because they have to be treated under the plan differently? Yes, sir. They are important, and when I was using categories, I was talking about in terms of alimony versus other restitution plus attorney's fees, that type of thing. In other words, there was a significant amount of money that was being paid by Mr. Young or people operating on his behalf, and Mrs. Young was figuring out, well, he owes this amount for this and this amount for that, and I'm going to assign this to that. But aren't they all domestic support obligations, whether it arises from attorney's fees or whatever the case may be according to the case law? They are. I mean, they are all domestic support obligations, but there were things that, for instance, the issue on alimony, you know, depending on when, you know, how much do you attribute to this money to alimony versus to something else. That was the point. What difference does it make? Well, the difference was with Ms. Cruz was taking the position that, among other things, that if things could be done, let me rephrase the question, the answer, that if things could be done after, excuse me, pre, I'm sorry, post-petition, pre-conversion is the concept I was getting at. And she was taking the position that those things, that those could be done through the plan, and that's what we tried to convey to Judge Taylor. Probably did not do a very good job of it in the hearing, tried to do better in the briefing. And the cases we cited, such as Hoggle and whatever, we submit support that proposition. And considering the fact that you have a, the parties ended up agreeing that this amount of money was owed, and this is the amount of money that was going to be paid, we felt that Ms. Cruz felt that this was sufficient to satisfy her obligation. But do we need to go to the exact calculation for the proposition that post-petition DSO obligations had to be paid or be current prior to confirmation or as a condition to confirmation? And that took, what, two years? I believe so, yes, sir, it took some time. Was there, there wasn't a calculation involved in the proposition that the debtor was not current under the obligation to pay current prior to confirmation? You know, they, the parties had gone, went back and forth on this, and there had been various objections. And what the hearing consisted of in large part was Judge Taylor trying to, trying to make numbers add up after five years or so in a complicated. Well, let's set the numbers aside. Okay. You know, the calculation related to whether it was 7,100 or 9,300 and whether it was pre-conversion, you know, post-petition pre-conversion, there were representations made both on the schedules that were filed and in the plan that the debtor was making the DSO payments going forward post-petition. Would continue. Would continue to make the payments post-petition. So setting aside whatever the number is, two years passed, and it sounds as though based on the record that those payments were not made. Well, Your Honor, several responses to that. One is that the, Mr. Young was representing to Ms. Cruz that these had been, that he was paying. Number two, there was no registry of the court or other neutral escrow type agency that things could go through where there could be a record. And then thirdly, you had the situation of the father paying a significant amount. But isn't it. Fourthly, he went to jail a second time because he wasn't paying those currently. So didn't she know that? She wasn't. This went on for several years, and there were various things that were going, various things going on in various different courts, and there were other attorneys involved in some of that. And she did say that, I believe she said that using the word continue was somewhat inartful in that sense. Did it rise to the level of misleading of the court necessary for Rule 11 sanctions? We submit no. When you couple the word continue and then put post-petition obligations in the plan, that is a problem, isn't it? Well, obviously Judge Taylor felt it was a problem, and we're trying to explain and are continuing to try to explain that she was dealing with, felt she was dealing with a chaotic situation and trying to get the total amounts of money resolved in a way that was going to get the person paid. But there's a difference between finding out how much is owed and making a statement that going forward, payments will continue to be made. And doesn't Rule 9011 require a reasonable inquiry? Yes, and we submit that there was such a reasonable inquiry that she, that he was, in fact, he was telling her that he was making payments. Apparently, he was making some payments, and there wasn't any registry you could go to elsewhere to check. But the obligee had a lawyer. Excuse me? The obligee had a lawyer. Yes, that's right. She could have called perhaps. Yes. Well, and the matter eventually got resolved between the various attorneys and without, at the 21,000 level, when it eventually got resolved. If I could move on to the issue of the separate sanctions, the, whatever you do on the Rule 9011 sanctions, we believe that Judge Taylor erred in separately, without a hearing and without notice, sanctioning her and punishing her for statements made in the argument or in the testimony itself on several grounds. One is, and in particular, the complete lack of notice. The order to show cause was for things that had been done in various pleadings and various documents that had been filed before. She goes in and defends herself and gets hit with summary, because it's just in the order, separate sanctions for things she allegedly said or that she did say, which Judge Taylor said were misleading or false or ledger domain and various other nouns. No notice, no opportunity to rebut, and we don't know precisely what Judge Taylor said. Specific things decided were false versus the synonyms he was using at other times. And then, and a lot of what he was saying were false were really mathematical disagreements, or at least it appears that what he's saying were just mathematical disagreements. But we submit the case law in Chambers and Fletcher, and these things are clear, that what you've got here is if you're going to sanction someone, and this was a separate sanction, completely separate sanction, you've got to give notice and opportunity to be heard. And Judge Taylor, at the very least, should have said, Ms. Cruz, I feel that you lied or give me a false testimony, whatever, in this, in the hearing we had in July, and I hereby set it for a second hearing, or I send you, these are the things that I think are false, and I give you 20 days, 30 days, 45 days, whatever, to respond to that because I'm thinking about separate sanctions. He didn't do that. The practical effect of that distinction is really the extra $1,000. No, sir, it's more than that. Okay. Among other things, it will have a very significant difference with regard to the referral to the Arkansas Supreme Court Committee on Professional Conduct because they, it's one thing, they're going to look at it one thing, that there's going to be Rule 11 sanctions, and there will be something else if there's a finding of false testimony under oath. And she is entitled to full notice and full opportunity to be heard and simply did not get that. The third point. And would she want that? I mean, suppose we end up deciding to affirm on the Rule 11 sanctions. Does she want to go back, want us to reverse and go back and then have another hearing? Yes, sir. In front of Judge Taylor? Well, prefer someone else, but we haven't, but I would go to, I presumably would go to Judge Taylor. But, yes, I mean, we want to be able, we want to know precisely what words, sentences, clauses, whatever are alleged to be false and whether the things in which you use synonyms, are those allegedly false or are those not, and to be able to rebut. There are three paragraphs on page 42, the first dealing with, of his opinion. The first dealing with Rule 11. The second dealing with what you call the inherent or separate sanctions. And the third paragraph refers to the, refers her or this order to the Committee of Professional Conduct. But there's no linkage of that third paragraph to the first two. It leaves one to wonder if it's linked to the Rule 11 or to the inherent authority. Well, the issue is, I do a lot of attorney discipline cases in Arkansas, in the Arkansas Supreme Court Committee on Professional Conduct, which is our ethics agency. And knowing from past experience, they will treat it, those two things differently. And that's, and that, so there is a very significant difference between the two. Do you want to tell us about the district court rules, which is the third part of it? Yes, our position on that, and it's very clear that the bankruptcy rules purport to, you know, allow a suspension. The district court rules, which we submit should trump the bankruptcy court rules, specifically incorporate the federal rules of disciplinary enforcement. And we submit that she is, that you can't suspend, that that trumps the local bankruptcy rule, the adoption of the federal rules of disciplinary enforcement. Well, do you disagree with anything Judge Taylor said in his second order reciting the history of their local rule and its approval by the district courts? Well, there's no question that they approved it. But as far as I can tell, the Eighth Circuit has never really dealt with the question of whether the district court rules adopting the uniform federal rules of disciplinary enforcement somehow trump that part of the bankruptcy. But the Eighth Circuit did approve the bankruptcy rules. Well, yes, sir, but that still leaves the district court rules. The courts are not, the district courts, as I understand, are not required to adopt the uniform disciplinary rules of enforcement. The Arkansas courts have done so. The other point. Well, for itself, the district courts, both district courts, I gather, have adopted that for the district court lawyers. Which is not inconsistent with saying, okay, bankruptcy court, yes, you are a unit of the district court. But bankruptcy court, you can have your own rules. And apparently that's kind of the arrangement they have. Well, that's one interpretation of it. We submit that to the extent that they're in conflict, the district court rules should rule. And Judge Taylor cited the Oldham case in his second. And the Oldham case sort of recites that as sort of dicta, boilerplate or dicta. But the issue of suspension, as I read Oldham, was not before the court. The attorney apparently did not appeal his suspension. What he was appealing was the contempt finding and also the referral issues. And so it really, Oldham really wasn't on point on this specific issue. And I see my time is up. I want you to finish. Okay. Well, and so as far as I can tell, this is the first time this specific issue has come up, at least in the circuit, where under the uniform federal rules, to what extent do they govern a division of the separate special division of the district court? And obviously that's a pure question of law. At least I would assume it would be regarded as a pure question of law. And obviously we feel that the district court rules, when they're in conflict with bankruptcy rules, should rule. Thank you, Mr. Rosen. Thank you. Thank you. The court will be in recess until further notice.